UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-05510-AB-PD | Date: | March 7, 2023 |
|---|---|---|---|

| Title: | *Overland Direct, Inc. v. Houshang Aframian et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER <u>DENYING</u> MOTION FOR REMAND [Dkt. No. 18] and <u>GRANTING</u> MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA FOR REFERENCE TO THE BANKRUPTCY COURT [Dkt. No. 19]**

Before the Court is a Motion for Remand ("Mot. Remand," Dkt. No. 18) filed by Plaintiff Overland Direct, Inc. ("Plaintiff") and a Motion to Transfer to the United States District Court for the Southern District of California ("Mot. Transfer," Dkt. No. 19) filed by Defendant Houshang Aframian ("Aframian"). Defendant Firooz Payan ("Payan") joined in the Motion for Remand. Oppositions and Replies were filed for both Motions. In response to a Court Order ("Order," Dkt. No. 38), Payan filed a Notice of Withdrawal as to Affirmative Defense Thirteen (Dkt. No. 40) and Plaintiff and Aframian each filed a Supplemental Brief (Dkt. Nos. 41, 42) on the Motion for Remand. For the following reasons, the Motion for Remand is **<u>DENIED</u>** and the Motion to Transfer is **<u>GRANTED</u>**.

## I.   BACKGROUND

The Court will not recount the long and extremely complicated history of the

disputes among the parties, which are being or have been litigated in several cases in state court and federal district court, and, as most relevant, in defendant Homesite Holdings LLC's ("Homesite") Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of California, *In re Homesite Holdings, LLC*, Case No. 20-03216-MM7 ("Homesite Bankruptcy"), and adversary proceedings filed in therein that involve all of the parties to this case.

The issues before this Court are simple to state: First, is there subject matter jurisdiction over this action, which Defendant Aframian removed from state court? Second, if the Court does have subject matter jurisdiction, should it transfer the case to the United States District Court for the Southern District of California for referral to its Bankruptcy Court? The answer to both questions is yes.

## II.   DISCUSSION

### A. The Court Has Subject Matter Jurisdiction Over This Action

Plaintiff filed this action in Los Angeles County Superior Court on February 11, 2021, alleging state-law claims for (1) Declaratory Relief; (2) Cancellation of Written Instrument; (3) Voidable Transfer; (4) Common Law Fraudulent Transfer; (5) Conspiracy; and (6) Intentional Misrepresentation and Concealment.[1] *See* Compl. (Dkt. No. 1-2). The claims arose out of transactions involving several real properties in the Pacific Palisades area of Los Angeles. Plaintiff originally named Homesite Holdings, LLC ("Homesite"), as a defendant, but dismissed Homesite without prejudice on March 16, 2021. *See* Dismissal (Dkt. No. 1-6). Defendant Aframian appeared shortly thereafter. On June 3, 2021, Plaintiff filed the currently-operative First Amended Complaint ("FAC," Dkt. No. 20-16) that asserts the same state-law causes of action. Even though Homesite was previously dismissed, the FAC still names Homesite, still identifies it as a defendant as to the declaratory relief claim, and includes many allegations regarding the Defendants' transactions relative to Homesite's assets. The overall thrust of Plaintiff Overland's allegations appears to be that Payan and Aframian caused Homesite's assets to be fraudulently transferred and/or engaged in other fraudulent transactions to hide Homesite's

---

[1] A prior action before this court, *Homesite Holdings, LLC v. Aframian, et al.*, Case No. 2:20-cv-08748-AB-PD ("Prior Action"), concerned identical allegations challenging the validity of Aframian's loan of $780,000 to Homesite Holdings, LLC ("Homesite") on February 21, 2017. The Court dismissed the prior action for lack of subject matter jurisdiction because at that time, the dispute appeared to be a creditor-against-creditor dispute that was not related to the Homesite Bankruptcy.

assets from Overland, which was a creditor of Homesite. *See, e.g.*, FAC ¶¶ 32-34.

Aframian removed this action on August 5, 2022, arguing that "the recently-filed [July 29, 2022] Answer of defendant Firooz Payan ('Payan') asserts an affirmative defense [Affirmative Defense Thirteen] that seeks to enforce a secret settlement agreement (which was unknown to Aframian during the pendency of the Prior Action) whose terms necessarily require the adjudicating court to determine the validity, applicability, and scope of the automatic stay of bankruptcy under 11 U.S.C. § 362(a)(3)." Notice of Removal ("NOR") 3:6-11. Specifically, "[t]he thirteenth affirmative defense in [Payan's] Answer ('Affirmative Defense 13') asserts, 'Plaintiff's causes of action are barred because Defendant entered into a settlement agreement with regard to the subject claims.' " NOR ¶ 12. The Court will refer to the "secret settlement agreement" as the "Cartwright-Payan Settlement Agreement." It arose in a different case between Payan on one hand, and on the other Plaintiff Overland and its principal Michael Cartwright and two other of Cartwright's businesses ("Cartwright Parties"). The Cartwright-Payan Settlement Agreement § 2.6 provides:

> The Parties agree that the Cartwright Parties will attempt to litigate an action regarding any property owned by Homesite Holdings, LLC adverse to Houshang Aframian. Should the Cartwright Parties prevail in any action to obtain the rights and title to any property owned by Homesite Holdings, LLC, the Parties agree that any proceeds from any such action be distributed as follows: First to any and all legal fees and expenses incurred by the Cartwright Parties in any such litigation, then any remaining proceeds shall be split equally between the Cartwright Parties (50%) and Payan (50%).

*See* NOR ¶ 9 (quoting Cartwright-Payan Settlement Agreement § 2.6, Ex. 55 to NOR (Dkt. No. 4-5 pp. 33-39)).

Aframian contends that this § 2.6 implicates the scope of the automatic bankruptcy stay arising out of the Homesite Bankruptcy because it is an attempt by Overland and Payan to transfer property of the Homesite Bankruptcy estate, and that by asserting it in this case Payan revealed that the case triggered federal jurisdiction. Aframian contends that Payan's Answer was the "first pleading or other document from which Aframian could ascertain that the automatic stay of bankruptcy would necessarily be adjudicated as part of the litigation." NOR ¶ 15.

Plaintiff seeks remand, arguing that Aframian removed untimely, that federal jurisdiction cannot be based on an affirmative defense, that Payan's

withdrawal of his Affirmative Defense Thirteen moots any connection between this case and the Homesite Bankruptcy, and that Aframian did not follow the correct procedures. None of Plaintiff's arguments has merit.

### 1. Aframian Timely Removed this Action

First, the removal was timely. Under 28 U.S.C. § 1446, there are two 30-day periods pursuant to which a defendant may remove an action: "during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005), quoting 28 U.S.C. § 1446(b). The first timeframe is not implicated here because Plaintiff in effect admits that neither the Complaint nor the FAC presents a basis for federal jurisdiction. The issue, therefore, is whether the removal was timely under the second 30-day time frame, that is, whether Aframian removed within 30 days after he received a paper showing that the case is removeable.

Aframian contends that the second 30-day period began on July 29, 2022 when Payan filed his Answer asserting Affirmative Defense Thirteen, which revealed that this action violated the Homesite Bankruptcy's automatic stay. Aframian removed this action timely thereafter, on August 5, 2022.

Plaintiff argues that the second 30-day period started much earlier, in August 2021, when Aframian and his counsel were provided the[Cartwright-Payan Settlement Agreement during trial in a state court case in San Diego, in which Overland is a plaintiff, and Aframian and Payan are named as defendants, *Overland Direct, Inc. v. Esola Capital Investment, LLC*, Case No. 37-2013-00078078-CU-BT-CTL ("SDSC Action"). *See* Mot. Remand 4:15-5:2. Plaintiff also points to an April 1, 2022 declaration, in yet another action (the *Nguyen* case), from Aframian's counsel reflecting that he knew of the settlement agreement. *See* Mot. Remand 9:3-7. But "courts in the Ninth Circuit have followed the 'paper in the case' rule in order to determine when the thirty-day provision begins to run. [] The 'paper in the case' rule requires that only official documents filed in the underlying state court matter be used as a basis for removal, and not documents filed in other cases." *Walker v. Motricity Inc.*, 627 F.Supp.2d 1137, 1142 (N.D. Cal. 2009), *rev'd on other grounds in Walker v. Morgan*, 386 Fed.Appx. 601, 602 (9th Cir. 2010). Here, neither the filing in the SDSC Action nor the declaration of Aframian's counsel in the *Nguyen* case triggered the second 30-day removal period

because neither was a paper filed in this case. Furthermore, Aframian's counsel's declaration in *Nguyen* could not trigger removal for a second reason: "The document that triggers the thirty-day removal period cannot be one created by the defendant." *Rossetto v. Oaktree Capital Management, LLC*, 664 F.Supp.2d 1122, 1129 (D.Haw. 2009). Accordingly, Plaintiff's argument that Aframian's August 5, 2022 removal was untimely because the second 30-day removal period was triggered in August 2021 or April 2022 is meritless.

The removal was therefore timely.

## 2. Payan's Affirmative Defense Thirteen Revealed that This Action Triggered Subject Matter Jurisdiction

Second, Payan's Affirmative Defense Thirteen revealed that this case violates the automatic stay in the Homesite Bankruptcy. Payan's Affirmative Defense Thirteen asserts that Overland's claims are barred because of the Cartwright-Payan Settlement Agreement. In that Agreement, Payan and the Cartwright Parties, including plaintiff Overland, settled several cases in exchange for, among other things, the promise made in §2.6 that the Cartwright Parties would litigate against Aframian an action regarding properties owned by Homesite and share the resulting proceeds with Payan. Of course, Homesite's properties are part of the Homesite Bankruptcy estate, and subject to the automatic stay.

Under the well-pleaded complaint rule, the defense of federal pre-emption does not ordinarily trigger federal jurisdiction. However, an exception to that rule is the doctrine of complete pre-emption: there are times when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' [] Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). Claims that require a court to decide the scope and extent of the automatic stay are subject to complete preemption. *See MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 915-16 (9th Cir. 1996) (malicious prosecution claims completely pre-empted by Bankruptcy Code).

Because the Cartwright-Payan Settlement Agreement is an agreement to transfer interests in the property of the Homesite Bankruptcy estate, it violates the

automatic stay[2], and Payan's raising that Agreement as a defense in this action establishes that this action is completely pre-empted. In addition, actions taken in violation of the automatic stay are void. *See Bank of New York Mellon as Trustee for Certificateholders of CWALT, Inc., Alt. Loan Trust 2005-54CB, Mortgage Pass-Through Cert. Series 2005-54CB v. Enchantment at Sunset Bay Condo. Assn.*, 2 F.4th 1229, 1232-33 (9th Cir. 2021) (foreclosure sale held in violation of bankruptcy stay was void). Relatedly, given complete federal pre-emption, the state court could not rule on the defense. *See Contractor's State License Bd. of Cal. v. Dunbar (In re Dunbar)*, 245 F.3d 1058, 1063 (9th Cir. 2001) (state court decisions regarding applicability of automatic stay are not entitled to full faith and credit, collateral estoppel, or res judicata, and are of no force and effect).

Furthermore, in his supplemental brief, Aframian contends that Plaintiff's filing of this action, in which Homesite was (and appears to remain) a named defendant, is in fact the Cartwright Parties' "attempt to litigate an action regarding any properties owned by Homesite Holdings, LLC adverse to Houshang Aframian," as the Cartwright Parties and Payan agreed to in stay-violative § 2.6. Aframian's characterization is persuasive. A creditor's claim attempting to seek property of the debtor through a fraudulent transfer claim is an automatic stay violation. *Koeberer v. California Bank of Commerce (In re Koeberer)*, 632 B.R. 680, 688-89 (9th Cir. BAP 2021). The very act of filing an action or motion with the intent of securing assets of the debtor is a willful violation of the automatic stay. *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 226 (9th Cir. 1989). The Cartwright-Payan Settlement Agreement § 2.6 makes it clear that Overland filed this action to do just that: to seek the property of debtor Homesite. Thus, independent of Payan's Affirmative Defense Thirteen, this entire action is properly characterized as a violation of the automatic stay.[3]

Fourth, the Court rejects Plaintiff's argument that "any issue" involving an alleged stay violation is moot because the Trustee-Payan Settlement Agreement settled any potential stay violations with the Chapter 7 Trustee. The Court issued

---

[2] In fact, the Homesite Bankruptcy Court has already found that the terms of the Cartwright-Payan Settlement Agreement violate the automatic stay in the Homesite Bankruptcy. *See* Aframian RJN Exs. 39-40 (Dkt. Nos. 20-39, 20-40) (Court Orders, of which this Court takes judicial notice); *see also* NOR ¶ 23 (quoting bankruptcy court order finding that § 2.6 is a stay violation).

[3] Understood this way, Payan's Affirmative Defense Thirteen did not "create" removal jurisdiction but simply put Aframian on notice of removal jurisdiction and started the second 30-day removal period.

an order describing the Trustee-Payan Settlement Agreement and Plaintiff's mootness argument, *see* Order (Dkt. No. 38), and ordered the parties to file supplemental briefing on it. *See* Suppl. Brs. (Dkt. Nos. 40, 41, 42). The Court will not repeat that discussion here but instead incorporates it by reference. In response to the Order, Payan filed a Notice of Withrawal, expressly withdrawing his Affirmative Defense Thirteen. *See* Dkt. No. 40. Nevertheless, the Court has reviewed the parties' supplemental briefing and is satisfied by Aframian's response that despite the Trustee-Payan Settlement Agreement, and despite Payan's withdrawal of his Affirmative Defense Thirteen, bankruptcy issues are still live. First and foremost, whether the Trustee-Payan Settlement Agreement is in fact sufficient to cure the stay violation is itself a bankruptcy issue that only a bankruptcy court can resolve. Relatedly, the extent to which the stay violation affects the bankruptcy case, and any remedies for the stay violation, can be determined only by the home bankruptcy court and not by a district court. *See Eastern Equipment and Services Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117, 121 (2nd Cir. 2001) ("[a]ny relief for a violation of the stay must be sought in the Bankruptcy Court"); *see also MSR Exploration*, 74 F.3d at 916 (stay violation claim must be "brought in the bankruptcy court itself, and not as a separate action in the district court"). Furthermore, as noted above, this entire action appears to be an effort under § 2.6 by the Cartwright Parties (i.e., Overland) to litigate an action against Aframian over Homesite property, thus triggering bankruptcy jurisdiction independent of Payan's Affirmative Defense Thirteen. And, as noted, the FAC continues to name Homesite as a defendant and includes many allegations regarding the defendants' transactions relative to Homesite property. Finally, as the action is a stay violation, Aframian may have a defense of unclean hands—a defense only the bankruptcy court may adjudicate since it necessarily implicates the automatic stay. *See, e.g., In re B-E Holdings, Inc.*, 228 B.R. 414, 420-21 (E.D. Wis. 1992) (damages attributable to plaintiff for unclean hands due to automatic stay violations associated with creditor's claims must be considered and deducted as a sanction). A claim filed in violation of the stay may also be dismissed. *See Matter of Coastal Group, Inc.*, 100 B.R. 177, 178 (Bankr. D. Del. 1989) (dismissing action for stay violation). Thus, the Trustee-Payan Settlement Agreement and Payan's withdrawal of his Affirmative Defense Thirteen did not abrogate federal bankruptcy jurisdiction over this case.

For all of these reasons— because the basis for federal jurisdiction was first revealed by Payan's Affirmative Defense Thirteen, because the Cartwright-Payan Settlement Agreement violates the automatic stay, and because this whole action was instituted based on the Cartwright-Payan Settlement Agreement's stay-violative §2.6—this action triggers exclusive federal bankruptcy jurisdiction.

### 3.  Aframian's Removal Was Procedurally Sound

Third, for the reasons fully explained by Aframian's opposition to the remand motion, the Court rejects Plaintiff's arguments that Aframian violated Local Rule 9027-1 for the United States Bankruptcy Court for the Central District of California because he removed it to District Court rather than to Bankruptcy Court. Aframian could not remove the action to the Bankruptcy Court in this District because the Homesite Bankruptcy is not in venued in this district. Instead, Aframian removed it to this District Court pursuant to 28 U.S.C. § 1441(a), and will seek transfer to the Southern District, for referral to that district's Bankruptcy Court. There does not appear to be anything improper about this approach.

### B. Aframian's Motion to Transfer is **<u>GRANTED</u>**.

Aframian moves in the interests of justice and for the convenience of the parties pursuant to 28 U.S.C. § 1404 and 28 U.S.C. § 1334(e)(1) to transfer this action to the United States District Court for the Southern District of California, for referral to that court's Bankruptcy Court pursuant to 11 U.S.C. § 157(a). Aframian argues that this case should be heard by the same bankruptcy court already presiding over the Homesite Bankruptcy. Plaintiff opposes.

The parties' positions on this echo their positions regarding jurisdiction, discussed above. The Court agrees that the jurisdictional question largely determines the transfer motion. Thus, given that the bankruptcy courts have exclusive jurisdiction over all property of the Homesite Estate and that this case violates the automatic stay, it follows that the interests of justice and the convenience of the parties are best served by transferring this case to the United States District Court for the Southern District of California, for referral to that court's Bankruptcy Court. The Motion to Transfer is granted. Concurrently with this Order, the Court will enter Aframian's proposed Order.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand is **<u>DENIED</u>** and Defendant Aframian's Motion to Transfer is **<u>GRANTED</u>**. Aframian's proposed Order to transfer the case will be issued concurrently herewith.

**IT IS SO ORDERED**.